1  Wayne E. Beaudoin, State Bar No. 184896
2  Grant P. Alexander, State Bar No. 228446
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3  601 South Figueroa, Suite 3900
4  Los Angeles, California 90017
   Telephone No.: 213.892.4992
5  Fax No.: 213.892.7731
6  E-Mail:  wbeaudoin@luce.com
             galexander@luce.com
7  Attorneys for Tracy Torme

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 WESTERN DIVISION

11

12  UNITED STATES OF AMERICA,          **CASE NO. CR 06-00809 MLR**

                    Plaintiff,         ***EX PARTE* APPLICATION OF**
13                                      **TRACY TORME FOR**
                    v.                  **SENTENCING CONSIDERATION**
14                                      **AND INCLUSION IN**
    WILLIAM WINE,                       **RESTITUTION ORDER;**
15                                      **MEMORANDUM OF POINTS AND**
                    Defendant.          **AUTHORITIES; DECLARATIONS,**
16                                      **EXHIBITS and PROPOSED**
                                        **ORDER**
17
                                        **DATE:   TBD**
18                                      **TIME:   TBD**
                                        **COURT: 8**
19

20                                      **Sentencing Date:   April 9, 2007**
                                        **Time:              1:30 p.m.**
21
                                        **[The Honorable Manuel L. Real]**
22

23

24

25

26

27

28

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that Tracy Torme will, and hereby does, bring this

3   *ex parte* application asking the Court to consider the wrongful acts of defendant

4   William L. Wine, Jr. towards the applicant as part of the Court's sentencing and

5   order of restitution against defendant William Wine ("Wine") on April 9, 2007.

6   This application is based on the grounds that:

7   (1) Evidence that Wine stole nearly half a million dollars from applicant's

8   savings and retirement bank accounts while acting as his business manager

9   should be considered "relevant conduct" in determining sentencing because

10  Wine's actions demonstrate a common scheme and or a pattern of criminal

11  activity.

12  (2) Torme should be considered a "victim" for purposes of the Victim and

13  Witness Protection Act, as the crime occurred as part of a common scheme or

14  pattern of criminal activity for which Wine has been indicted,

15  (3) Wine agreed as part of his plea agreement that the amount of restitution he

16  was obligated to pay to his victims would not be restricted by the amounts

17  alleged in the plea terms of the plea agreement,

18  (4) Wine agreed as part of his plea agreement that the Court's order of

19  restitution may include losses arising from charges not prosecuted as part of

20  the plea agreement, and, last but not least,

21  (5) Torme is entitled to equal treatment under the law and should in all

22  fairness be included under the Court's restitution order when sentencing Wine

23  for his crimes.

24  This application is based on this Application, the Memorandum of Points and

25  Authorities filed concurrently herewith, the Declarations of Tracy Torme and

26  Wayne E. Beaudoin, the files in this matter, and such further argument as may be

27  considered by the Court.

28

1    Pursuant to Rule 7-19.1 of the Local Rules for the United States District

2  Court for the Central District of California, Torme provides the following

3  information:

4       (1)    United States of America is represented in this matter by:

5              Beong-Soo Kim
               United States Attorney's Office
6              1100 United Stets Courthouse
               312 North Spring Street
7              Los Angeles, CA 90012
               (213) 894-3868 (telephone)
8              (213) 894-6269 (facsimile)

9              Defendant William Wine is represented in this matter by:
               Marc S. Harris
10             Beck, De Corso, Daly, Kreindler & Harris
               601 W 5th Street, 12th floor
11             Los Angeles, CA, 90071
               (213) 688-1198 (telephone)
12             (213) 489-7532 (facsimile)

13      (2)    Torme gave notice to counsel for the United States of America and

14  William Wine of the date, time, and substance of this *ex parte* application by letters

15  dated March 26, 2007 and facsimiled and mailed the same date. *See* Beaudoin

16  Decl., ¶ 2, Ex. "A.".

17      (3)    Counsel for Wine has indicated that they will be opposing the *ex parte*

18  application on the grounds that "the government has concluded that Mr. Wine

19  engaged in no wrong doing with respect to any client, other than Mr. Stanton. Other

20  than the unproven allegations of the civil complaint, there is no evidence that Mr.

21  Wine engaged in any illegal activity with respect to Mr. Tormé." *See* Beaudoin

22  Decl., ¶ 3, Ex. "B."

23      (4)    The United States Attorney's Office has no opposition to Mr. Torme's

24  filing an ex parte application in order to bring to the court's attention losses that Mr.

25  Torme believes should be considered relevant conduct for purposes of sentencing

26  and restitution.  The government has not concluded that Mr. Wine engaged in no

27  wrongdoing with respect to any client, other than Mr. Stanton.   However, the

28  government has not sought to include Mr. Torme's alleged losses in its relevant

1  conduct calculations, because its investigation to date has not uncovered definitive
2  evidence that defendant's fraud against Mr. Stanton also involvedthe commission of
3  criminal fraud against Mr. Torme.  *See* Beaudoin Decl., ¶ 4.

4      (5)    On March 30, 2007 I served all parties with a copy of the *ex parte*
5  application, with notice that that they have 24 hours from actual receipt of the
6  papers to file any opposition. *See* Beaudoin Decl., ¶ 5, Ex. "C."

7  DATED: March 29th, 2007

        LUCE, FORWARD, HAMILTON &
        SCRIPPS LLP

By: _____
        Wayne E. Beaudoin
        Attorneys for Tracy Tormé

211589.1

1  Wayne E. Beaudoin, State Bar No. 184896
   Grant P. Alexander, State Bar No. 228446
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   601 S. Figueroa, Suite 3900
3  Los Angeles, California 90017
   Telephone No.: 213.892.4992
4  Fax No.: 213.892.7731
   E-Mail:  wbeaudoin@luce.com
5           galexander@luce.com

6  Attorneys for Tracy Tormé

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          | Case No. CR 06-00809 MLR

12          Plaintiff,                 | The Hon. Manuel L. Real

13  v.                                 | **MEMORANDUM OF POINTS AND
                                        | AUTHORITIES IN SUPPORT OF
14  WILLIAM WINE,                       | EX PARTE APPLICATION OF
                                        | TRACY TORME FOR
15          Defendant.                  | SENTENCING CONSIDERATION
                                        | AND INCLUSION IN
16                                      | RESTITUTION ORDER**

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND FACTS ........................................................................2

    A.    Torme's Claim Against Wine .......................................................2

    B.    The Information and Plea Agreement............................................5

III.  ARGUMENT............................................................................................6

    A.    Wine's Common Scheme of Fraudulently Stealing from Business Clients is "Relevant Conduct" for Sentencing Purposes.........6

    B.    Torme Should Be Included as an Identified Victim for Purposes of Restitution Under the Victim and Witness Protection Act and Mandatory Victims Restitution Act. .......................................................8

    C.    Wine Agreed to Restitution for All Victims As Part of the Plea Agreement ...................................................................13

    D.    Wine Waived Any Due Process Rights He May Have Had................14

    E.    Torme is Entitled to Equal Treatment Under the Law...........................14

IV.   CONCLUSION ......................................................................................15

i

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF CRIME VICTIM
TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESTITUTION ORDER

1

# TABLE OF AUTHORITIES

2    <u>CASES</u>                                                           <u>Page</u>

3    *United States v. Edwards,*

4          162 F.3d 87 (3d Cir. 1998)...............................................................8

5    *United States v. Fine,*

6          975 F.2d 596 (9th Cir.1992).............................................................6

7    *United States v. Henoud,*

8          81 F.3d 484 (4th Cir. 1996)............................................................11

9    *United States v. Hensley,*

10          91 F.3d 274 (1st Cir. 1996)......................................................10, 12

11    *United States v. Johnson,*

12          132 F.3d 1279 (9th Cir. 1997)........................................................12

13    *United States v. Kones,*

14          77 F.3d 66 (3rd Cir. 1996).....................................................9, 10, 11

15    *United States v. Lawrence,*

16          189 F.3d 838 (9th Cir. 1999)....................................................12, 13

17    *United States v. Neal,*

18          36 F.3d 1190 (1st Cir.1994)..............................................................9

19    *United States v. Obasohan,*

20          73 F.3d 309 (11th Cir. 1996)..........................................................11

21    *United States v. Reed,*

22          80 F.3d 1419 (9th Cir. 1996)..........................................................10

23    *United States v. Rice,*

24          38 F.3d 1536 (9th Cir. 1994)..........................................................11

25    *United States v. Ritsema,*

26          31 F.3d 559 (7th Cir.1994)................................................................6

27

28

ii

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF CRIME VICTIM
TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESTITUTION ORDER

1    *United States v. Sapp,*

2         53 F.3d 1100 (10th Cir. 1995) *cert. denied*, 116 S.Ct. 796 (1996)................11

3    *United States v. Seligsohn,*

4         981 F.2d 1418 (3d Cir.1992)...............................................................9

5    *United States v. Welsand,*

6         23 F.3d 205 (8th Cir.) *cert. denied*, 115 S.Ct. 641 (1994)..............................12

7    **STATUTES**

8    Mandatory Victims Restitution Act.........................................................8, 10

9    Title 18, United States Code, Section 1343................................................6

10   Title 18, United States Code, Section 3663.....................................8, 9, 11, 13

11   Title 18, United States Code, Section 3664................................................8

12   Victim and Witness Protection Act....................................................8, 10, 11

13   **OTHER AUTHORITIES**

14   United States Sentencing Commission,*Guidelines Manual,*

15        Section 1B1.3 (Nov. 2006)...........................................................6, 7

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF CRIME VICTIM
TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESTITUTION ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant William Wine ("Wine") made a living stealing from his clients. When he was caught, Wine fled to Mexico using his clients' money. Now he is back in the States ready to confess his crimes and provide restitution to his victims.

As part of his plea agreement, Wine agreed to plead guilty to the government's allegations that Wine stole approximately $1,000,000 from the famed actor, Harry Dean Stanton while acting as his financial manager. Wine agreed that as part of the plea agreement, he would provide restitution to not only Mr. Santon, but to all his victims. Movant Tracy Tormé ("Mr. Tormé") is one such victim.

Substantially similar to the facts surrounding Mr. Stanton, Wine was employed as Mr. Tormé's business/financial manager at the same time he was working for Mr. Stanton. It was during this time that Wine began stealing from Mr. Tormé, much in the same way he did from Mr. Stanton, i.e., Wine would gain access to accounts and withdraw money he was not entitled to then cover his tracks to avoid detection.

In carrying out this scheme, Wine stole approximately $400,000.00 of Mr. Tormé's life savings and retirement to invest in personal and speculative business ventures under his own name, as well $50,000 to make his escape to Mexico once his indiscretions were discovered.   That money is now gone.

By this *ex parte* application, Tormé seeks to have the Court:

(1)   Consider Wine's wrongful acts towards Mr. Tormé as "relevant conduct" for sentencing purposes; and

(2)   Include Mr. Tormé in any order of restitution issued by the Court against Wine, so as to place Wine's victims on an equal footing in their attempts to recover what was stolen from them.

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF CRIME VICTIM
TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESTITUTION ORDER

## II.    BACKGROUND FACTS

### A.    Tormé's Claim Against Wine

Mr. Tormé is the son of the noted singer, songwriter and actor, Mel Tormé. Following his father's footsteps, Mr. Tormé also works in the entertainment industry and is a noted writer and producer of various movies and television shows. It is in this context that Mr. Tormé became acquainted with Wine (Tormé Decl., ¶ 2.)

In 1998, Mr. Tormé was introduced to defendant Wine, who represented to Mr. Tormé that he had experience, skill, knowledge and expertise in the field of personal business management. At the time, Wine represented to Mr. Tormé that he was doing business under the name William Wine Jr. Business Management. Based on these and other representations, Tormé engaged Wine as his personal business manager. Wine served as Mr. Tormé's business manager from 1998 until February 2005. (Tormé Decl., ¶ 3.)

Under the terms of the engagement, Wine agreed, in exchange for a percentage of Mr. Tormé income, that he would manage Mr. Tormé's financial affairs, including providing tax advice, accounting, bookkeeping and, when authorized, investment advice. With Mr. Tormé permission, Wine opened up bank accounts in Tormé's name to manage Mr. Tormé's financial affairs, including accounting services and bill-paying, and was an authorized signatory on those accounts, which included accounts with Bank of America and HSBC. (Tormé Decl., ¶ 4.)

However, before opening these bank accounts, Wine agreed that he would consult with Mr. Tormé and receive approval from Mr. Tormé before transferring any funds from Mr. Tormé's banking accounts for the purposes of investment or similar purposes and would not make any investments without Mr. Tormé's express permission. (Id.)

In February 2005, Mr. Tormé discovered that Wine was absent from his regular place of business and was believed to be missing. (Tormé Decl., ¶ 5.) Mr.

2

1   Tormé was advised by one of Wine's employees that Wine had "disappeared." (Id.)

2   Weeks later, Mr. Tormé discovered that Wine had left the country, seemingly hiding

3   away from clients, creditors and the Federal Bureau of Investigation, while residing

4   in Cabo San Lucas, Mexico. (Id.)

5       Around that same time, Mr. Tormé discovered that Wine had, without his

6   knowledge, consent or authority, transferred approximately $50,000.00 of Mr.

7   Tormé's personal funds to himself. (Tormé Decl., ¶ 6.) These funds were removed

8   from Mr. Tormé's Bank of America account on February 1, 2005 and deposited by

9   Wine into a Citibank account that same day.  Tormé has no right or interest inthe

10  Citibank account the funds were deposited into, which appears to be the "Master"

11  account for Wine, according to the endorsement on the back of the check used in the

12  transfer. (Id.)[1]

13      Shortly thereafter, in March 2005, Mr. Tormé also discovered thatWine had,

14  without his knowledge or authority, made multiple transfers, totaling $225,000.00 of

15  Mr. Tormé's personal funds to a frozen pizza company by the name of Heaven's

16  Bistro.  (Tormé Decl., ¶ 7.)

17      To effectuate these transfers, Wine formed a business entity named "Wine

18  Investments III" and opened up a bank account under that name, with Wine as the

19  named signatory on the account.  Wine would then on occasion transfer funds from

20  Tormé's account into the Wine Investments III account, and from there transfer

21  funds from the Wine Investments III account to Heaven's Bistro. Other times, Wine

22  would simply transfer funds directly from Tormé's account to Heavens' Bistro.[2]

23  Mr. Tormé was unaware that these transactions had taken place and at no time did

24  Mr. Tormé authorize Wine to transfer $225,000.00 of his personal funds to

25

26  _____

27  [1] See Beaudoin Decl. at ¶ 11, Exhibit "D" – Copies of cancelled checks evidencing transfers.

28  [2] Id.

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF CRIME VICTIM
TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESTITUTION ORDER

1  Heavens' Bistro.[3]

2      Mr. Tormé subsequently contacted Heavens' Bistro and ended up speaking

3  with a Mark Stryker ("Stryker"), the purported president of Heavens' Bistro.

4  Stryker advised Mr. Tormé that he was aware that the funds invested in Wine

5  Heaven's Bistro originated from Mr. Tormé, but that the company issued stock to

6  Wine instead of Mr. Tormé.   (Tormé Decl., ¶ 8.)   To date, Tormé has never

7  received any certificates of stock or other documentation confirming his purported

8  ownership interest in Heaven's Bistro and all attempts to have heavens' Bistro

9  return his money have been fruitless, as the company is no longer operating. (Id.)

10     In the fall of 2005, Mr. Tormé filed a civil action against Wine.   After

11  spending tens of thousands of dollars in discovery, investigation and court

12  appearances, Mr. Tormé sought and received a judgment against Wine in an amount

13  in excess of $340,000.00, none of which has been paid.[4]   Based on discovery in that

14  proceeding, it is apparent that to the extent Wine has any assets to pay a judgment,

15  those assets are insufficient to pay what is owed to Tormé and are wrapped up into

16  investment partnerships that have remained dormant for the past two years. (Tormé

17  Decl., ¶ 10.)

18     Mr. Tormé has openly cooperated with the Federal Bureau of Investigation

19  and U.S. Attorney's Office since Wine's departure, providing them with names,

20  addresses, background information and documents as requested.   At no time did

21  anyone ever advise Tormé that an indictment had been filed against Wine, that Wine

22  had entered into a plea agreement with the U.S. Attorneys Office, that the facts and

23  circumstances did not warrant attention from the U.S. Attorney's office, or that he

24  _____

25  [3] Wine "invested" another $175,000 of Tormé's savings into another company
   without Torme's knowledge or consent.  However, Tormé has already resolved any
26  claims he may have against that company. (Torme Decl., ¶ 9.)

27  [4] The judgment consists of the principal amount of $275,000 Wine wrongfully
   converted, which was not capable of collection from third parties, and the remainder
28  consists of costs and interest charges.   By this application, Mr. Tormé is only
   seeking the principal amount of $275,000 in restitution.

                                        4

1   would otherwise be excluded from participation as a victim in any prosecution of
2   Wine.  In fact, it was only within the last month that Mr. Tormé discovered that
3   Wine was even in the country and ready to face sentencing for substantially similar
4   crimes committed against Mr. Harry Dean Stanton.  (Tormé Decl., ¶ 11.)

5   **B.   The Information and Plea Agreement**

6   On October 27, 2006 the United States Attorney's Office filed an information
7   accusing Wine of engaging in illegal behavior while acting as a personal financial
8   manger for Harry Dean Stanton and others.  Specifically, the information alleges
9   that Wine engaged in a scheme to defraud Mr. Stanton by accessing his personal
10  bank and retirement accounts to withdraw money in excess of the amounts he was
11  entitled to under the terms of his retainer agreement with Mr. Stanton.  In all, Wine
12  stole over $950,000 from Mr. Stanton while acting under the guise of a personal
13  financial planner.[5]

14  On the same date, a plea agreement entered into by and between Wine and the
15  United States Attorney was filed with the Court, wherein Wine agreed that:

16  (1)   He would be required to pay full restitution to the victims of his
17  offense; and

18  (2)   The amount of restitution would not be restricted to the amounts
19  alleged in the count to which he is pleading guilty and *may include losses arising*
20  *from charges not prosecuted pursuant to the Plea Agreement* as well as all
21  relevant conduct in connection with the count charges.[6]

22  / / /
23  / / /
24  / / /
25  / / /
26  / / /

27

28  [5] See Beaudoin Decl. at ¶ 13, Exhibit "E."
    [6] See Beaudoin Decl. at ¶ 14, Exhibit "F." (emphasis added).

5

III.  **ARGUMENT**

A.    **Wine's Common Scheme of Fraudulently Stealing from Business Clients is "Relevant Conduct" for Sentencing Purposes.**

Under the sentencing guidelines, a district court is required to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ..." *See* United States Sentencing Commission, *Guidelines Manual*, § 1B1.3 (Nov. 2006).

"Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable sentencing range." USSG § 1B1.3, comment. (backg'd).  The acts must merely be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."  USSG § 1B1.3, comment. (n.9(A)).  Further, "[t]he cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction."  USSG § 2B1.1, comment. (n.18); see also *United States v. Fine*, 975 F.2d 596, 599-600 (9th Cir.1992) ("[C]onduct which was part of the scheme is counted, even though the defendant was not convicted of crimes based upon the related conduct.")

These relevant conduct provisions of the guidelines "directs a court to sentence a defendant for uncharged conduct germane to the charge-offense by authorizing it to consider events before, during, and after the offense conduct." *United States v. Ritsema*, 31 F.3d 559, 566 (7th Cir.1994).

Here, Wine has agreed to plead guilty to violating Title 18, United States Code, Section 1343 (wire fraud), which includes the element of engaging in a scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.  18 U.S.C.A. § 1343.  More specifically,

1  Wine is admitting to a scheme of defrauding his client, Mr. Stanton, over a period of
2  years by acting in the course and scope of his position as a personal financial
3  manager, which enabled him to stealing hundreds of thousands of dollars from Mr.
4  Stanton.  However, Wine's indiscretions were not limited to Mr. Stanton.

5      Wine's criminal activity towards Mr. Stanton is alleged to have occurred
6  beginning in or about 1996 and continuing through 2005.  While Wine was preying
7  on Mr. Stanton's trust in him as a personal financial advisor, Wine was busy
8  plundering other clients' savings and retirement accounts as well.

9      It was during approximately this same period of time, from 1998 through
10 2005, Wine wrongfully converted approximately $450,000 of Mr. Tormé's life
11 savings and retirement for his own benefit, while acting as a personal business
12 manager using the same exact scheme as used against Mr. Stanton.

13     Wine's wrongful actions towards Mr. Stanton and Mr. Tormé are
14 "substantially connected" in that Wine used common victims (i.e., his business
15 clients), for the common purpose of wrongfully stealing monies to benefits himself,
16 and using an identical modus operandi– gaining access to clients' personal savings
17 and retirement accounts and then withdrawing monies from those accounts that did
18 not belong to him.   See USSG § 1B1.3, comment. (n.9(A)).

19     Moreover, Wine's criminal acts against Mr. Tormé were not only
20 substantially connected, but also occurred temporally with the commission of his
21 crimes against Mr. Stanton and thus "occurred during the commission of the offense
22 of conviction."  See United States Sentencing Commission, *Guidelines Manual*, §
23 1B1.3 (Nov. 2006).

24     Thus, Wine's criminal conduct with respect to Mr. Tormé should be
25 considered "relevant conduct" by the Court in determining sentencing, even though
26 Wine has not been charged for his crimes against Mr. Tormé.

27

28

1   **B.      Tormé Should Be Included as an Identified Victim for Purposes of**

2   **Restitution Under the Victim and Witness Protection Act and**

3   **Mandatory Victims Restitution Act.**

4   The Victim and Witness Protection Act ("VWPA") and Mandatory Victims

5   Restitution Act ("MVRA") , 18 U.S.C. §§ 3663- §3664, govern restitution in

6   criminal cases.

7   The VWPA reads in pertinent part:

8   (a)(1)(A) The court, when sentencing a defendant convicted of an
    offense under this title ..., other than an offense described in section

9   3363A(c), may order, in addition to or, in the case of a misdemeanor, in
    lieu of any other penalty authorized by law, that the defendant make

10  restitution to any victim of such offense....

11  (a)(1)(B)(i) The court, in determining whether to order restitution under
    this section, shall consider-

12
    (I) the amount of the loss sustained by each victim as a result of the

13  offense; and
    (II) the financial resources of the defendant, the financial needs and

14  earning ability of the defendant and the defendant's dependents, and
    such other factors as the court deems appropriate.

15

16  * * *

17  18 U.S.C. § 3663.

18  In 1996, Congress passed the Mandatory Victims Restitution Act ("MVRA"),

19  which effectively augmented and partially superseded the VWPA by requiring

20  district courts to impose restitution on defendants convicted of certain offenses

21  without regard to their ability to pay. The MVRA, which added 18 U.S.C. § 3663A

22  expanded the group of victims eligible for restitution to those "proximately harmed"

23  by a scheme or conspiracy and makes restitution mandatory for particular crimes,

24  including those offenses involving fraud or deceit, regardless of the defendant's

25  economic circumstances. 18 U.S.C. § 3663A; *United States v. Edwards*, 162 F.3d

26  87, 89 (3d Cir. 1998).

27  The MVRA provides, in relevant part, that:

28  (a)(1) Notwithstanding any other provision of law, when sentencing a

8

1  defendant convicted of an offense described in subsection (c), the court
2  shall order, in addition to, or in the case of a misdemeanor, in addition
   to or in lieu of, any other penalty authorized by law, that the defendant
3  make restitution to the victim of the offense or, if the victim is
   deceased, to the victim's estate.

4  (2) For the purposes of this section, the term "victim" means a person
5  directly and proximately harmed as a result of the commission of an
   offense for which restitution may be ordered including, in the case of
   an offense that involves as an element a scheme, conspiracy, or pattern
6  of criminal activity, any person directly harmed by the defendant's
7  criminal conduct in the course of the scheme, conspiracy, or pattern....

   * * *
8
9  (c)(1) This section shall apply in all sentencing proceedings for
   convictions of, or plea agreements relating to charges for, any offense--

10 (A) that is—

11 * * *

12 (ii) an offense against property under this title, including any offense
13 committed by fraud or deceit;

   * * *
14
15 (B) in which an identifiable victim or victims has suffered a physical
   injury or pecuniary loss.

16    Notably, section 3663A(2) expanded the district courts' restitution powers in

17 such cases to the extent that a district court could order restitution for any harm

18 directly caused by the defendant's criminal conduct in the course of the scheme,

19 conspiracy, or pattern.

20    Section 3663A(2) provides that "a victim of an offense that involves as an

21 element a scheme, a conspiracy, or a pattern of criminal activity means **any person**

22 directly harmed by the defendant's criminal conduct in the course of the scheme,

23 conspiracy, or pattern." 18 U.S.C. § 3663(a)(2) (emphasis added). *See generally*

24 *United States v. Neal*, 36 F.3d 1190, 1200 (1st Cir.1994). This is true even though

25 such conduct is not "the specific conduct that is the basis of the offense of

26 conviction." 18 U.S.C. § 3663A(2); see *United States v. Kones*, 77 F.3d 66, 70 (3rd

27 Cir. 1996) (citing *United States v. Seligsohn*, 981 F.2d 1418, 1421-22 (3d

28 Cir.1992)).

1    For example, where a defendant is convicted of defrauding person X and a
2    fraudulent scheme is an element of that conviction, the sentencing court has power
3    to order restitution for the loss to defrauded person Y directly caused by the
4    defendant's criminal conduct in that "scheme", even where the defendant is not
5    convicted of defrauding Y.  See *United States v. Reed*, 80 F.3d 1419, 1423 (9th Cir.
6    1996)(citing *United States v. Kones*, 77 F.3d 66, 70 (3rd Cir. 1996)).

7    Accordingly, the language of the VWPA and the MVRA empower the district
8    courts to order restitution without regard to whether the particular criminal conduct
9    of the defendant, which directly harmed the victim, was alleged in a count to which
10    the defendant pled guilty, or was even charged in the indictment.*See United States*
11    *v. Hensley*, 91 F.3d 274 (1st Cir. 1996)(interpreting the VWPA).

12    In *Hensley*, the defendant was indicted for a scheme to obtain merchandise
13    under false pretenses from various computer-products distributors across the
14    country.  Specifically, the indictment alleged that on April 1, 1995, Hensley, using
15    the alias "Robert Halford," rented a box at Mail Box, Etc. ("MBE") in Boston and
16    placed orders for computer equipment in behalf of a fictitious company for delivery
17    to that box. Hensley remitted five forged checks bearing the AT&T logo to pay for
18    the equipment. *Id*. at 275.

19    Hensley pled guilty to that indictment, which included, among other things,
20    mail and wire fraud charges. After his guilty plea but before sentencing, the
21    Government learned that Hensley had committed additional fraudulent acts during
22    the same time period. *Id*.  The Pre-Sentence Report noted that on March 30, 1995,
23    Hensley, this time using that name "William Noonan," rented a box at a different
24    branch of MBE. Hensley placed orders for software under the name Noonan and
25    tendered a counterfeit money order drawn on a Boston Check Cashiers company
26    account. *Id*.  The district court ordered Hensley to pay restitution to the companies
27    victimized by this second scheme and Hensley appealed, claiming that these
28    companies were not victims of the offense of conviction because the indictment did

10

1 | not charge him with passing counterfeit money orders. *Id.*

2 |     The First Circuit upheld the restitution order, ruling that "the outer limits of a
3 | VWPA § 3663(a)(2) restitution order encompass all direct harm from the criminal
4 | conduct of the defendant which was within any scheme, conspiracy, or pattern of
5 | activity that was an element of any offense of conviction." *Id.* at 277 (citing *Kones*,
6 | supra, 77 F.3d at 79). In determining whether Hensley's second scheme fell within
7 | the offense of conviction, the First Circuit examined the indictment and the plea
8 | agreement to "demarcate the scheme, including its 'mechanics ... [,] the location of
9 | the operation, the duration of the criminal activity, [and] the methods used.'" *Id.*
10 | (quoting *United States v. Henoud*, 81 F.3d 484, 489-90 n. 11 (4th Cir. 1996)).

11 |     The First Circuit held that "in determining whether particular criminal
12 | conduct comprised part of a unitary scheme to defraud, the sentencing court should
13 | consider the totality of the circumstances, including the nature of the scheme, the
14 | identity of its participants and victims, and any commonality in timing, goals, and
15 | modus operandi." *Id.* at 278. Applying this test, the Court concluded that "the
16 | commonality of the victims, timing and modus operandi utterly precludes a find of
17 | clear error." Id.

18 |     Other courts interpreting the VWPA and related statutes routinely uphold
19 | restitution orders for conduct not charged in the indictment. See, *United States v.*
20 | *Henoud*, 81 F.3d 484, 489 (4th Cir. 1996)(restitution valid when ordered for all
21 | victims of defendant's scheme to defraud long-distance carriers, not just victims
22 | named in indictment); *United States v. Obasohan*, 73 F.3d 309, 311 (11th Cir. 1996)
23 | (restitution valid when ordered for all victims of scheme to obtain credit cards, even
24 | though defendant convicted only of attempt to obtain just one credit card); *United*
25 | *States v. Rice*, 38 F.3d 1536, 1545 (9th Cir. 1994) (restitution valid when ordered for
26 | victims of mail fraud and conspiracy, even though victims not specifically
27 | mentioned in information); *United States v. Sapp*, 53 F.3d 1100, 1105 (10th Cir.
28 | 1995) (restitution valid when defendant's fraudulent statement to one bank resulted

11

in losses to second bank that had discounted defendant's loan, where jury determined was defendant guilty of bank fraud scheme), *cert. denied*, 116 S.Ct. 796 (1996); *United States v. Welsand*, 23 F.3d 205, 207 (8th Cir.) (restitution valid when it included all amounts received in 11-year mail fraud scheme, rather than only amounts received in response to misrepresentations made within the five-year limitation period), *cert. denied*, 115 S.Ct. 641 (1994).

In *United States v. Lawrence*, 189 F.3d 838 (9th Cir. 1999), the defendant was convicted of mail fraud and bankruptcy fraud. The district court made a finding at sentencing that the defendant had engaged in a pattern of fraudulent activity over a number of years that caused losses to defendant's creditors, colleagues, and the Bankruptcy Court. The district court ordered restitution in the amount of $574,700, only $60,411 of which was directly attributable the counts of conviction. On appeal, the Ninth Circuit Court of Appeal held that because the mail fraud count included a scheme to defraud, "any acts which were a part of that scheme, but for which [the defendant] was not convicted, could be included in the restitution award." *Id.* at 847; see also *United States v. Johnson*, 132 F.3d 1279, 1287 (9th Cir. 1997) (because offense included a scheme to defraud, district court did not abuse discretion in ordering restitution for all losses arising from scheme); *United States v. Hensley*, 91 F.3d 274, 276-77 (1st Cir. 1996)(defendant can be required to pay restitution for losses related to entire mall fraud scheme even where convicted for only one mailing).

Accordingly, Congress specifically contemplated that orders of restitution were designed to benefit all victims, regardless of whether or not the government specifically prosecuted the defendant on their behalf, so long as the underlying charges involved.

In light of the foregoing, Mr. Tormé seeks to be included in this Court's order of restitution. Clearly the Court has the authority to order restitution to those victims such as Mr. Tormé that, in addition to the victim on whose behalf the

12

1  defendant was prosecuted, have been directly proximately harmed by the
2  defendant's fraudulent schemes, regardless of whether the defendant has been
3  prosecuted on their behalf as an identified victim. See *United States v. Lawrence*,
4  supra.

5       As set forth above, although only Wine's crimes against Mr. Stanton were
6  included in the government's charges, the crimes committed against both Messrs
7  Stanton and Mr. Tormé are "substantially connected" in all respects. Much like Mr.
8  Stanton, Mr. Tormé has been victimized by Wine's long-standing scheme and
9  pattern of engaging victims under the guise of a financial advisor, winning their
10 trust, and then separating them from their life savings and retirement accounts.
11 Wine should be ordered to pay for all of his crimes and not just those committed
12 against those that have benefited from the government's investigation and
13 prosecution. This is only fair.

14      **C.**    **Wine Agreed to Restitution for All Victims As Part of the Plea**
15           **Agreement.**

16      Section 3663A(a)(3) of the MVRA, provides mandatory restitution to all
17 victims directly affected by the defendant's conduct, to the extent the defendant
18 agreed to such restitution as part of any plea agreement. ("The court shall also
19 order, if agreed to by the parties in a plea agreement, restitution to persons other
20 than the victim of the offense.") 18 U.S.C. § 3663A(3).

21      Equitable considerations aside, Wine has already agreed that he would be
22 required to pay "full restitution" to his victims, that Court may order restitution to
23 other victims not name in the information and that he may be responsible for paying
24 restitution in amounts over and above the amounts contemplated  in the plea
25 agreement.

26

27

28

1    ## D.  Wine Waived Any Due Process Rights He May Have Had.

2    It cannot be said that Wine has been deprived of his Due Process rights to

3    confront Mr. Tormé and defend himself against the claims brought against him.

4    Wine had every opportunity to respond to these allegations in the state civil suit, yet

5    intentionally forfeited his right to do by allowing a default judgment to be entered

6    against him.  Once Wine forfeited that right, a state court judge reviewed the same

7    evidence that is now before this Court, consisting of Mr. Tormé's testimony and

8    documentary evidence of unauthorized transfers, and determined, as a matter of law,

9    that Wine committed these wrongs and awarding a judgment in favor of Mr. Tormé.

10    Accordingly, Wine has been given the opportunity to be heard and has

11    forfeited that right.  He cannot now be heard to claim that he did not do the wrongs

12    he is now being accused of or claim that he is not responsible for the debts owed.

13    ## E.  Torme is Entitled to Equal Treatment Under the Law.

14    Including some victims in the Court's restitution order and excluding others

15    carries significant consequences that would effectively create a preference of one

16    victim class over the other.  On the one hand, there are the victims that the

17    government has elected to prosecute criminals for crimes against them.  On the other

18    hand, there are those victims that, for whatever good reason, the government has

19    elected not to prosecute on their behalf.  The former have the power and resources

20    of the United States government behind them.  The others, quite simply, do not.

21    Although Mr. Tormé has obtained a civil judgment against Wine, which has

22    cost him dearly in legal fees and expenses, this means little when forced to compete

23    with the United States government in enforcement and collection.  Indeed, there are

24    no significant consequences should Wine fail to pay Mr. Tormé's judgment.  So

25    long as Wine is able to leave the state (or country as has been the case) and keep his

26    assets hidden, he faces very little risk of civil attachment.

27    On the other hand, should Wine fail to diligently attempt to satisfy the Court's

28    restitution order, Wine could face an extended probation or even return to prison.

14

1   Moreover, to the extent Wine has assets to satisfy any civil judgment, those assets
2   are more easily discoverable by the federal government with its vast resources, as
3   compared to the limited means Mr. Tormé possesses.  Should Mr. Tormé even be
4   able to uncover assets in Wine's possession, the federal government undoubtedly is
5   already aware of such assets and has frozen them during the course of its
6   investigation, only to be liquidated and used to satisfy, at least in part, any
7   restitution order that the Court may issue.

8          Thus, Mr. Tormé's efforts to seek out and acquire a civil judgment against
9   Wine will be all for naught and he will have to stand in line behind other victims of
10  Mr. Tormé's crimes.  This is not equal justice under the law.  Equity, fairness and
11  justice dictate that victims be placed on an equal footing and receive equal treatment
12  under the law.

14  **IV.   CONCLUSION**

15         Wine has committed wrongs against many victims.  All of Wine's
16  wrongdoings should be considered for sentencing purposes.  Similarly, all of Wine's
17  victims should be treated with same consideration and entitlement to restitution.

18  DATED:  March _21_ 2007              LUCE, FORWARD, HAMILTON &
19                                       SCRIPPS LLP

21                                       By: _____

22                                       Wayne E. Beaudoin
23                                       Attorneys for Tracy Tormé

# DECLARATION OF TRACY TORME

I, Tracy Torme, declare:

1.    I have personal knowledge of the statements set forth below, and if called upon to testify thereto under oath, I could and would competently do so.

2.    I am the son of the noted singer, songwriter and actor, Mel Torme. Following my father's footsteps, I also work in the entertainment industry and have been credited as a writer/executive producer and creator of various movies and television shows.   It is in this context that I became acquainted with defendant William L. Wine Jr. ("Wine"), the defendant herein.

3.    I was introduced to Wine in 1998.  Wine represented to me that he had experience, skill, knowledge and expertise in the field of personal business management.  At the time, Wine represented to me that he was doing business under the name William Wine Business Management.   Based on these and other representations, I engaged Wine as my personal business manager.  Wine served as my personal business manager from 1998 until February 2005.

4.    Under the terms of the engagement, Wine agreed, in exchange for a percentage of my income, that he would manage my financial affairs, including providing me with tax advice, accounting, bookkeeping and bill-paying services and, when authorized, investment services.  With my permission, Wine opened up bank accounts in my name to manage my financial affairs and was an authorized signatory on those accounts, which included accounts with Bank of America and HSBC.

However, before opening these bank accounts, Wine agreed that he would consult with me and receive my approval before transferring any funds from my accounts for the purposes of investment or similar purposes and would not make any investments on my behalf without my express permission.

5.    In February 2005, I discovered that Wine was absent from his regular place of business and was missing.  I was advised by one of Wine's employees that

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600   LOS ANGELES, CA  90017-5832   TELEPHONE (213) 892-4992   FACSIMILE (213) 892-7731

Wine had "disappeared" and was believed to have committed suicide. Within a few weeks, I was informed that Wine had not committed suicide; that he was alive and doing fine, and that he had simply fled the country to Mexico, hiding away from his clients, creditors and the Federal Bureau of Investigation.

To the best of my knowledge, Wine is currently residing in Cabo San Lucas, Mexico and has been since his disappearance in February 2005. I believe this to be true, based on my discussions with Wine's former employees, from reviewing the deposition testimony of Pam Wine in my civil action against Wine and based on discussions with agents from the Federal Bureau of Investigation, who have advised me that Wine is currently under investigation for allegedly defrauding myself and other clients.

6.    After being advised that Wine had fled the country, I was informed by one of Wine's employees that my accounts appeared to be intact, but another client had been making accusations that they were missing money from their accounts that Wine was responsible for. I therefore started asking my financial institutions for copies of bank statements on accounts that Wine had opened for in my name.

After receiving and reviewing these statements and other documents I received from Wine's employees and colleagues, I was absolutely shocked and amazed to discover that Wine had, without my knowledge, consent or authority, written himself a $50,000.00 check from one of my accounts on February 1, 2005.

7.    Shortly thereafter, in March 2005, I discovered that Wine had, without my knowledge or authority, made multiple transfers, totaling $225,000.00 of my personal funds to a frozen pizza company by the name of Heavens' Bistro, Inc., who is also named in my civil action. I was unaware that these transactions had taken place and at no time did I authorize Wine to transfer $225,000.00 of my personal funds to Heavens' Bistro.

8.    I subsequently contacted Heavens' Bistro and ended up speaking with a Mark Stryker ("Stryker"), the purported president of Heavens' Bistro.  Stryker

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600 LOS ANGELES, CA 90017-5832 TELEPHONE (213) 892-4992 FACSIMILE (213) 892-7731

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600 LOS ANGELES, CA 90017-5832 TELEPHONE (213) 892-4992 FACSIMILE (213) 892-7731

1   advised me that he was aware that the funds invested in Wine Heaven's Bistro

2   originated from me, but that the company issued stock to Wine instead.  Thanks to

3   Wine's duplicity, I discovered I had been paying the salaries of several of Heavens'

4   Bistro's executives, as well as funding the making and distribution of pizzas.  I

5   received absolutely nothing in return – no stock, not even a frozen pizza – and all

6   my attempts to have Heavens' Bistro return my money have been fruitless, as the

7   company is no longer operating.

8        9.    I have also discovered that Wine misappropriated another $175,000 an

9   invested it in a technology company.  However, I have since resolved any disputes I

10   may have had with that company.

11        10.    In the fall of 2005, I filed a civil action against Wine and others.  After

12   spending tens of thousands of dollars in discovery, investigation and court

13   appearances, I sought and received a judgment against Wine in an amount in excess

14   of $340,000.00, none of which has been paid.  Based on discovery in that

15   proceeding, it is apparent that to the extent Wine has any assets topay a judgment,

16   those assets are insufficient to pay what is owed to me and are wrapped up into

17   investment partnerships that have remained dormant for the past two years.

18        11.    I have openly cooperated with the Federal Bureau of Investigation and

19   U.S. Attorney's Office since Wine's departure, providing them with names,

20   addresses, background information and documents as requested.  At no time did

21   anyone ever advise me that an indictment had been filed against Wine, that Wine

22   had entered into a plea agreement with the U.S. Attorneys Office, that the facts and

23   circumstances did not warrant attention from the U.S. Attorney's office, or that I

24   would otherwise be excluded from participation as a victim in any prosecution of

25   Wine.  In fact, it was only within the last month that I discovered that Wine was

26   even in the country and ready to face sentencing for substantially similar crimes

27   committed against Mr. Harry Dean Stanton.

28

DECLARATION OF TRACY TORMÉ

12.   I have spent over one-hundred thousand dollars so far in costs and legal fees in an attempt to recoup what was stolen from me, only to learn that these efforts likely will have been in vein if I am not included as an identified victim in Wine's criminal action, as I do not have the energy or the resources to compete with the United States Government in tracking Wine's movements and assets. In addition to financial concerns, I have been hospitalized a dozen times over the last few years with bouts of severe nausea and vomiting that the doctors opine are stress related. I can trace this stress directly to Wine's actions.

The pain and indignity that my wife and I have experienced, all at the hands of my old friend Bill, is hard to quantify. Of course we want to get our money back, but we also long for justice. My sincere hope is that there is enough justice to go around for us as well.

I declare under the penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct.  This declaration was signed this ___ day of March 2007 in Los Angeles, California.


_____
Tracy Torme

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600 LOS ANGELES, CA 90017-5832 TELEPHONE (213) 892-4992 FACSIMILE (213) 892-7731

12.     I have spent over one-hundred thousand dollars so far in costs and legal fees in an attempt to recoup what was stolen from me, only to learn that these efforts likely will have been in vein if I am not includedas an identified victim in Wine's criminal action, as I do not have the energy or the resources to compete with the United States Government in tracking Wine's movements and assets. In addition to financial concerns, I have been hospitalized a dozen times over the last few years with bouts of severe nausea and vomiting that the doctors opine are stress related. I can trace this stress directly to Wine's actions.

The pain and indignity that my wife and I have experienced, all at the hands of my old friend Bill, is hard to quantify. Of course we want to get our money back, but we also long for justice. My sincere hope is that there is enough justice to go around for us as well.

I declare under the penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct. This declaration was signed this 29 day of March 2007 in Los Angeles, California.

Tracy Torme

### DECLARATION OF WAYNE E. BEAUDOIN

I, Wayne E. Beaudoin, declare:

1.     I am an attorney licensed to practice before the United States District Court for the Central District of California.  I am a partner with Luce, Forward, Hamilton & Scripps LLP, counsel for applicant Tracy Torme in this criminal action, as well as the attorney responsible for handling Mr. Torme's civil action against William L. Wine, Jr., the defendant herein.  I have personal knowledge of the statements set forth below, and if called upon to testify thereto under oath, I could and would competently do so.

2.     Pursuant to Rule 7-19.1 of the Local Rules for the United States District Court for the Central District of California, I provided notice of this *ex parte* hearing to the following parties and their counsel on March 26, 2007 via facsimile and U.S. mail:

> Beong-Soo Kim
> United States Attorney's Office
> 1100 United Stets Courthouse
> 312 North Spring Street
> Los Angeles, CA 90012
> (213) 894-3868 (telephone)
> (213) 894-6269 (facsimile)

> Marc S. Harris
> Beck, De Corso, Daly, Kreindler & Harris
> 601 W 5th Street, 12th floor
> Los Angeles, CA, 90071
> (213) 688-1198 (telephone)
> (213) 489-7532 (facsimile)

Attached hereto as Exhibit "A" is a true and correct copy of my March 26, 2007 notice.

3.     Counsel for William L. Wine, Jr. ("Wine"), defendant herein, has indicated that they will be opposing the *ex parte* application on the grounds that:

> "*the government has concluded that Mr. Wine engaged in no wrong doing with respect to any client, other than Mr. Stanton.  Other than*

1

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600  LOS ANGELES, CA  90017-5832  TELEPHONE (213) 892-4992  FACSIMILE (213) 892-7731

*the unproven allegations of the civil complaint, there is no evidence that Mr. Wine engaged in any illegal activity with respect to Mr. Torme."*

Attached hereto as Exhibit "B" is a true and correct copy of Wine's attorney's response.

4.     With respect to the United States Attorney's Office, Assistant United States Attorney Beong-Su Kim authorized me to inform the Court as follows:

*"The United States Attorney's Office has no opposition to Mr. Torme's filing an ex parte application in order to bring to the court's attention losses that Mr. Torme believes should be considered relevant conduct for purposes of sentencing and restitution.  The government has not concluded that Mr. Wine engaged in no wrongdoing with respect to any client, other than Mr. Stanton.  However, the government has not sought to include Mr. Torme's alleged losses in its relevant conduct calculations, because its investigation to date has not uncovered definitive evidence that defendant's fraud against Mr. Stanton also involved the commission of criminal fraud against Mr. Torme."*

5.     On March 30, 2007 I served all parties with a copy of this *ex parte* application, with notice that that they have 24 hours from actual receipt of the papers to file any opposition.

Attached as Exhibit "C" is a true and correct copy of my March 30, 2007 notice.

6.     On September 15, 2006 Mr. Torme filed a civil action against Wine, alleging that Wine has wrongfully stolen or otherwise misappropriated approximately $450,000 of Mr. Torme's savings and retirement in the course and scope of acting as Mr. Torme's business manager and financial consultant.  The civil action bears the caption, *Tracy Torme v. William L. Wine, et al.*, Los Angeles Superior Court Case No. BC343408.

2

DECLARATION OF WAYNE E. BEAUDOIN

LUCE, FORWARD, HAMILTON & SCRIPPS LLP 777 SOUTH FIGUEROA, SUITE 3600 LOS ANGELES, CA 90017-5832 TELEPHONE (213) 892-4992 FACSIMILE (213) 892-7731

7.     At the onset of the civil action, I had occasional contact with Wine's criminal defense counsel herein, namely Marc Harris, Esq. of Beck, DeCorso, Daly, Kreindler & Harris. I discussed with Mr. Harris the fact that a civil action had been filed against Wine. Mr. Harris advised that he did not represent Wine in the civil action, but would speak with Wine to see if he would be willing to offer any assistance in tracking down the money that he had taken from Mr. Torme's accounts and placed with various start-up companies, as well as his own bank account. However, Wine refused to provide any assistance whatsoever.

8.     After several months of attempting to locate Wine at a great deal of expense, on June 20, 2006 the Los Angeles Superior Court granted Mr. Wine's request that the summons in that action be published in the Los Angeles Times. The summons was published in the Los Angeles Times on June 21, 2006, June 28, 2006, July 5, 2006 and July 12, 2006.

9.     On July 28, 2006, I took the deposition of Wine's wife, Pam Wine. Among other things, she testified that Wine now resides in Cabo San Lucas, Mexico and was there to "sort things out" for a while. Mrs. Wine testified that she did no keep in regular contact with Wine, with whom she has filed divorce against, and that she did not know his residential address in Cabo San Lucas.

10.     Having failed to respond to the summons, my office filed a Request for Entry of Default with the Clerk of the Los Angeles Superior Court, which was approved by the Clerk of the Court on November 8, 2006. The Entry Default was mailed to the Wine at his last known address on November 15, 2006.

11.     During the course of discovery in this action, I have received various documents from my client and various financial institutions to determine how he funneled money into Heavens' Bistro and other entities. Based on my review of those documents, I have concluded that Wine Jr. formed a business entity named "Wine Investments III" and opened up a bank account under that name at East West Bank, with Wine identified as the named signatory on the account. Wine would on

1   occasion transfer funds from Mr. Torme's Bank of America and HSBC accounts
2   into the Wine Investments III account, and from there transfer funds from the Wine
3   Investments III account to Heaven's Bistro. Other times, Wine would simply
4   transfer funds directly from Plaintiff's account to Heavens' Bistro.

5          True and correct copies of the checks I subpoenaed from these banking
6   institutions used to transfer the funds from Torme's accounts, to Wine Investments
7   III and then Heavens' Bistro, as well as one check written directly from Torme's
8   Bank of America account to Wine (totaling $275,000.00), are collectively attached
9   hereto as Exhibit "D."

10         12.    With this evidence and Mr. Torme's declaration testimony, I petitioned
11  the Los Angeles Superior Court to enter a default judgment against Wine, which it
12  did on November 8, 2006 in the amount of $275,000, plus prejudgment interest. A
13  true and correct copy of the default judgment is attached hereto as Exhibit "D."

14         13.    For the Court's convenience, a true and correct copy of the October 27,
15  2006 Information filed against Wine is attached hereto as Exhibit "E."

16         14.    For the Court's convenience, a true and correct copy of the Plea
17  Agreement entered into by and between Wine and the United States Attorney's
18  Office is attached hereto as Exhibit "F."

19
20
21         I declare under the penalty of perjury pursuant to the laws of the United States
22  of America, that the foregoing is true and correct.  This declaration was signed this
23  ___ day of November 2007 in Los Angeles, California.

24                                        _____
25                                              Wayne E. Beaudoin
26
27
28

DECLARATION OF WAYNE E. BEAUDOIN

LUCE, FORWARD, HAMILTON & SCRIPPS LLP  777 SOUTH FIGUEROA, SUITE 3600  LOS ANGELES, CA  90017-5832  TELEPHONE (213) 892-4992  FACSIMILE (213) 892-7731

# EXHIBIT

A

# LUCE FORWARD

ATTORNEYS AT LAW • FOUNDED 1873

Luce, Forward, Hamilton & Scripps LLP

601 South Figueroa
Suite 3900
Los Angeles, CA 90017
213.892.4992
213.892.7731 fax
www.luce.com

WAYNE E. BEAUDOIN, PARTNER.
DIRECT DIAL NUMBER 213.892.4915
DIRECT FAX NUMBER 213.452.8038
EMAIL ADDRESS wbeaudoin@luce.com

**March 26, 2007**

**VIA FACSIMILE**

Mr. Beeong-Soo Kim
U.S. Attorney's Office
312 North Spring Street, Ste. 600
Los Angeles, CA 90012
(213) 894-6269 (facsimile)

Marc S. Harris, Esq.
Beck, De Corso, Daly, Kreindler & Harris
601 W 5th Street, 12th floor
Los Angeles, CA, 90071
(213) 489-7532 (facsimile)

Re:  USA v. William L. Wine, Jr.
     United States District Court Criminal Case No. CR06-00809

Gentlemen:

As you are already aware, I represent Tracy Tormé.

Please be advised that I intend on filing an *ex parte* application with the Court, requesting that Mr. Tormé be included as part of the Court's April 9, 2007 sentencing order against William L. Wine, Jr.

Essentially, I will be asking that the Court consider including Mr. Tormé as an identified victim and, to the extent the Court orders Wine Jr. to provide restitution to his victims, include Mr. Tormé in the order.  Mr. Tormé is seeking approximately $275,000 in restitution.  This figure represents actual damages and does not include any attorney's fees or costs incurred in pursuing our civil action against Wine Jr.

Please advise as to whether your respective offices intend on opposing this *ex parte* application or wish to be heard at any hearing scheduled by the Court on the matter.

Please call me should you have any questions.  Thank you.

Very truly yours,

Wayne E. Beaudoin
of
Luce, Forward, Hamilton & Scripps LLP

WEB:mh

210581.1

Message Confirmation Report                                        MAR-26-2007 11:47 AM MON

WorkCentre M20 Series
Machine ID              :
Serial Number           :    RYU261927........
Fax Number              :

Name/Number      :   99062#33929*00001#98946269
Page             :   2
Start Time       :   MAR-26-2007 11:46AM MON
Elapsed Time     :   00'42"
Mode             :   STD G3
Results          :        O.K

---

## LUCE FORWARD

Luce, Forward, Hamilton & Scripps LLP

777 South Figueroa
Suite 3800
Los Angeles, CA 90017
213.892.4992
213.892.7731 fax

www.luce.com

### FACSIMILE COVER SHEET

DATE:         March 26, 2007

TO:  Beeong-Soo Kim                         TO:  Marc S. Harris, Esq.

FIRM:  U S Attorney's Office                FIRM:  Beck, De Corso, Daly, Kreindler & Harris

CITY, STATE:  Los Angeles, CA              CITY, STATE:  Los Angeles, CA

FAX TELEPHONE NUMBER:  (213) 894-6269       FAX TELEPHONE NUMBER:  (213) 489-7532

CONFIRMING NUMBER:                          CONFIRMING NUMBER:


FROM:         Wayne E. Beaudoin

DIRECT DIAL:   213.892.4915                 DIRECT FAX:   213.452.8038

TRANSMITTING:   2   PAGES (including cover page)

ADDITIONAL COMMENTS OR INSTRUCTIONS:

**PRIVILEGED AND CONFIDENTIAL** - *All information transmitted hereby is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who received this communication in error should notify us immediately by telephone and return the original to us.*

**IF YOU DO NOT RECEIVE THE ENTIRE FAX, CALL 213.892.4992
BETWEEN THE HOURS OF 8:00 a.m. AND 6:00 p.m.**

Time/Date Transmitted: * By Operator: *
March 26, 2007 at _____
User No.  99062   Charge No. 33929-00001

Message Confirmation Report                    MAR-26-2007 11:49 AM MON

```
                                WorkCentre M20 Series
                                Machine ID           :
                                Serial Number        :   RYU261927.......
                                Fax Number           :
```

```
Name/Number      :   99062#33929*00001#94897532
Page             :   2
Start Time       :   MAR-26-2007 11:48AM MON
Elapsed Time     :   00'46"
Mode             :   STD G3
Results          :        O.K
```

---

## LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

777 South Figueroa
Suite 3600
Los Angeles, CA 90017
213.892.4902
213.892.7731 fax

www.luce.com

### FACSIMILE COVER SHEET

DATE:          March 26, 2007

TO:  Beeong-Soo Kim                          TO:  Marc S. Harris, Esq.

FIRM:  U.S. Attorney's Office                FIRM:  Beck, De Corso, Daly, Kreindler & Harris

CITY, STATE:  Los Angeles, CA               CITY, STATE:  Los Angeles, CA

FAX TELEPHONE NUMBER:  (213) 894-6269        FAX TELEPHONE NUMBER:  (213) 489-7532

CONFIRMING NUMBER:                           CONFIRMING NUMBER:


FROM:          Wayne E. Beaudoin

DIRECT DIAL:   213.892.4915                  DIRECT FAX:   213.452.8038

TRANSMITTING:   2   PAGES (including cover page)

ADDITIONAL COMMENTS OR INSTRUCTIONS:

**PRIVILEGED AND CONFIDENTIAL** - *All information transmitted hereby is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who received this communication in error should notify us immediately by telephone and return the original to us.*

**IF YOU DO NOT RECEIVE THE ENTIRE FAX, CALL 213.892.4992
BETWEEN THE HOURS OF 8:00 a.m. AND 6:00 p.m.**

Time/Date Transmitted: * By Operator: *
March 26, 2007 at _____
User No.  99062   Charge No. 33929-00001

# EXHIBIT

B

BECK, DE CORSO, DALY, KREINDLER & HARRIS
A PROFESSIONAL LAW CORPORATION

601 WEST FIFTH STREET, 12TH FLOOR
LOS ANGELES, CALIFORNIA 90071-2025
TELEPHONE: (213) 688-1198
FACSIMILE: (213) 489-7532
WEBSITE: www.beckdecorso.com

MELISSA M. DULAC

**RECEIVED**

DIRECT DIAL
(213) 533-8476

MAR 2 7 2007

*LFH&S/WEB*

March 26, 2007

*VIA FACSIMILE*

Wayne E. Beaudoin, Esq.
Luce, Forward, Hamilton & Scripps LLP
777 South Figueroa Street, Suite 3600
Los Angeles, CA 90017

    Re:   *USA v. William L. Wine, Jr.*

Dear Mr. Beaudoin:

    My office received your letter of today's date and I write to notify you that we will oppose any *ex parte* application you propose to file requesting that Mr. Tormé be included as part of the sentencing order the court will issue on April 9, 2007, in the above-referenced case. The FBI has thoroughly reviewed all of Mr. Wine's financial and accounting records, and the government has concluded that Mr. Wine engaged in no wrongdoing with respect to any client, other than Mr. Stanton. Other than the unproven allegations of the civil complaint, there is no evidence that Mr. Wine engaged in any illegal activity with respect to Mr. Tormé. Accordingly, it is entirely inappropriate to include in the restitution order any amount requested by Mr. Tormé.

    Please let me know when you intend to file this *ex parte* application, as your letter was silent in that regard.

           Very truly yours,

           MELISSA M. DULAC

MMD:vk

223758.1

# EXHIBIT

C

# LUCE · FORWARD

ATTORNEYS AT LAW · FOUNDED 1873

Luce, Forward, Hamilton & Scripps LLP

601 South Figueroa
Suite 3900
Los Angeles, CA 90017
213.892.4992
213.892.7731 fax
www.luce.com

WAYNE E. BEAUDOIN, PARTNER.
DIRECT DIAL NUMBER 213.892.4915
DIRECT FAX NUMBER 213.452.8038
EMAIL ADDRESS wbeaudoin@luce.com

**March 30, 2007**

**VIA FACSIMILE**

Mr. Beong-Soo Kim
U.S. Attorney's Office
312 North Spring Street, Ste. 600
Los Angeles, CA 90012
(213) 894-6269 (facsimile)

Melissa M. Dulac, Esq.
Beck, De Corso, Daly, Kreindler & Harris
601 W 5th Street, 12th floor
Los Angeles, CA, 90071
(213) 489-7532 (facsimile)

Re:     USA v. William L. Wine, Jr.
        United States District Court Criminal Case No. CR06-00809

Counsel:

Attached please find Tracy Torme's ex parte application relative to William L. Wine, Jr.'s upcoming sentencing.

Please be advised that you have 24 hours to file a response, if any, upon which the matter then stands submitted. If the Court wishes a hearing, the court clerk will contact all counsel with the date and time of the hearing.

Please call me should you have any questions.  Thank you.

Very truly yours,

Wayne E. Beaudoin
of
Luce, Forward, Hamilton & Scripps LLP

WEB:mh

Attachment – As noted.

Message Confirmation Report                          MAR-30-2007 02:06 PM FRI

WorkCentre M20 Series
Machine ID            :
Serial Number         :    RYU261927.......
Fax Number            :

Name/Number   :   99540#33929*00001#94897532#
Page          :   2
Start Time    :   MAR-30-2007 02:05PM FRI
Elapsed Time  :   00'46"
Mode          :   STD G3
Results       :        O.K

---

## LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

777 South Figueroa
Suite 3600
Los Angeles, CA 90017
213.892.4992
213.892.7731 fax

www.luce.com

### FACSIMILE COVER SHEET

DATE:            March 30, 2007

TO:  Beeong-Soo Kim

TO: *Melissa Dulac, Esq*
~~Marc S. Harris~~, Esq.

FIRM:  U.S. Attorney's Office

FIRM:  Beck, De Corso, Daly, Kreindler & Harris

CITY, STATE:  Los Angeles, CA

CITY, STATE:  Los Angeles, CA

FAX TELEPHONE NUMBER:  (213) 894-6269

FAX TELEPHONE NUMBER:  (213) 489-7532

CONFIRMING NUMBER:

CONFIRMING NUMBER:

FROM:            Wayne E. Beauham

DIRECT DIAL:    213.892.4915

DIRECT FAX:    213.452.8038

TRANSMITTING:        PAGES (including cover page)

ADDITIONAL COMMENTS OR INSTRUCTIONS:  Ex Parte Application will following in next facsimile

**PRIVILEGED AND CONFIDENTIAL -** *All information transmitted hereby is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who received this communication in error should notify us immediately by telephone and return the original to us.*

**IF YOU DO NOT RECEIVE THE ENTIRE FAX, CALL 213.892.4992
BETWEEN THE HOURS OF 8:00 a.m. AND 6:00 p.m.**

Time/Date Transmitted: * By Operator: *
March 30, 2007 at _____
User No.  99062   Charge No. 33929-00001

Message Confirmation Report                    MAR-30-2007 02:10 PM FRI

WorkCentre M20 Series
Machine ID              :
Serial Number           :  RYU261927.......
Fax Number              :

| | | |
|---|---|---|
| Name/Number | : | 99540#33929*00001#98946269# |
| Page | : | 2 |
| Start Time | : | MAR-30-2007 02:10PM FRI |
| Elapsed Time | : | 00'40" |
| Mode | : | STD G3 |
| Results | : | O.K |

## LUCE FORWARD

Luce, Forward, Hamilton & Scripps LLP

777 South Figueroa
Suite 3600
Los Angeles, CA 90017
213.892.4002
213.892.7731 fax

www.luce.com

### FACSIMILE COVER SHEET

DATE:          March 30, 2007

TO:  Beeong-Soo Kim                      TO:  ~~Marc S. Harris, Esq.~~  *Melissa Dulac, Esq*

FIRM:  U.S. Attorney's Office            FIRM:  Beck, De Corso, Daly, Kreindler & Harris

CITY, STATE:  Los Angeles, CA           CITY, STATE:  Los Angeles, CA

FAX TELEPHONE NUMBER:  (213) 894-6269   FAX TELEPHONE NUMBER:  (213) 489-7532

CONFIRMING NUMBER:                      CONFIRMING NUMBER:

FROM:          Wayne E. Beaudoin

DIRECT DIAL:   213.892.4915             DIRECT FAX:   213.452.8038

TRANSMITTING:         PAGES (including cover page)

ADDITIONAL COMMENTS OR INSTRUCTIONS:  Ex Parte Application will following in next facsimile

**PRIVILEGED AND CONFIDENTIAL** - *All information transmitted hereby is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who received this communication in error should notify us immediately by telephone and return the original to us.*

**IF YOU DO NOT RECEIVE THE ENTIRE FAX, CALL 213.892.4992
BETWEEN THE HOURS OF 8:00 a.m. AND 6:00 p.m.**

Time/Date Transmitted: * By Operator: *
March 30, 2007 at ___ _____
User No.  99062   Charge No. 33929-00001

# EXHIBIT



57

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):* | **FOR COURT USE ONLY** |

**JUD-100**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Wayne E. Beaudoin (State Bar No. 184896)
Luce, Forward, Hamilton & Scripps, LLP
777 S. Figueroa Street, Suite 3600
Los Angeles, CA 90017
TELEPHONE NO.: 213.892.4992     FAX NO. *(Optional)*: 213.452.8021
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff Tracy Torme

ORIGINAL

FILED
LOS ANGELES SUPERIOR COURT

FEB 01 2007

JOHN A. CLARKE, CLERK

BY F. MOREAU, DEPUTY

F.O.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90071
BRANCH NAME:

RECEIVED
DEC 18 2006

PLAINTIFF: Tracy Torme

DEFENDANT: Wine, et al.

| **JUDGMENT** | | | |
|---|---|---|---|
| ☐ By Clerk | ☒ By Default | ☐ After Court Trial | |
| ☒ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial | |

| CASE NUMBER: |
|---|
| BC 343408 |

**JUDGMENT**

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court  ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*:
      before *(name of judicial officer)*:
   b. Appearances by:
      ☐ Plaintiff *(name each)*:                    ☐ Plaintiff's attorney *(name each)*:
         (1)                                             (1)
         (2)                                             (2)
      ☐ Continued on Attachment 3b.
      ☐ Defendant *(name each)*:                    ☐ Defendant's attorney *(name each)*:
         (1)                                             (1)
         (2)                                             (2)
      ☐ Continued on Attachment 3b.
   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632)  ☐ was not  ☐ was   requested.

Form Approved for Optional Use
Judicial Council of California JUD-
100 [New January 1, 2002]
**JUDGMENT**
Code of Civil Procedure, §§ 585, 664.6

2002 © American LegalNet, Inc.

| PLAINTIFF: Tracy Torme | CASE NUMBER: |
|---|---|
| DEFENDANT: Wine, et al. | BC 343408 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**   ☒ **THE COURT**   ☐ **THE CLERK**

4. ☐ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. ☒ for plaintiff *(name each):* Tracy Torme

c. ☐ for cross-complainant *(name each):*

and against defendant *(names):*
William L. Wine, Jr., William Wine Jr. Business Management, Wine Investments III, LP
☐ Continued on Attachment 5a.

and against cross-defendant *(name each):*
☐ Continued on Attachment 5c.

b. ☐ for defendant *(name each):*

d. ☐ for cross-defendant *(name each):*

6. **Amount.**

a. ☒ Defendant named in item 5a above must pay plaintiff on the complaint:

c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) ☒ | Damages | $ | 275,000.00 |
| (2) ☒ | Prejudgment interest at the annual rate of 10.0 % | $ | 64,166.42 |
| (3) ☐ | Attorney fees | $ | |
| (4) ☒ | Costs | $ | 1,384.30 |
| (5) ☐ | Other *(specify):* | $ | |
| (6) | **TOTAL** | $ | 340,550.72 |

| | | | |
|---|---|---|---|
| (1) ☐ | Damages | $ | |
| (2) ☐ | Prejudgment interest at the annual rate of % | $ | |
| (3) ☐ | Attorney fees | $ | |
| (4) ☐ | Costs | $ | |
| (5) ☐ | Other *(specify):* | $ | |
| (6) | **TOTAL** | $ | 0.00 |

b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
☐ Defendant named in item 5b to recover costs $
☐ and attorney fees $

d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
☐ Cross-defendant named in item 5d to recover costs $
☐ and attorney fees $

7. ☒ Other *(specify):* Interest calculated at $75.32 per day from the date of judgment on the amounts due.

Date: FEB 0 1 2007

☐ _____
Ralph W. Dau
**JUDICIAL OFFICER**

Date: _____

☐ Clerk, by _____, Deputy

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____, Deputy

Page 2 of 2

JUD-100 [New January 1, 2002]           **JUDGMENT**

2002 © American LegalNet, Inc.

# EXHIBIT

E

1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11   UNITED STATES OF AMERICA,      )    CR No. 06-  809
                                    )
12                  Plaintiff,      )
                                    )    I N F O R M A T I O N
13          v.                      )
                                    )    [18 U.S.C. §§ 1343, 1346:
14   WILLIAM WINE,                  )    Wire Fraud; 18 U.S.C. § 2:
                                    )    Aiding and Abetting and
15                  Defendant.      )    Causing an Act to Be Done]
                                    )

16

17       The United States Attorney charges:

18   INTRODUCTION

19       1.   Beginning in or about 1996 and continuing to in or about

20   2005, defendant WILLIAM WINE ("defendant") worked as a personal

21   financial manager for Harry Dean Stanton ("Stanton") and others.  As

22   Stanton's personal financial manager, defendant was responsible for

23   managing Stanton's personal financial affairs, including paying

24   Stanton's bills, preparing his tax returns, and investing his money.

25   As Stanton's personal financial manager, defendant had full access

26   to Stanton's personal bank, business, and retirement accounts.

27       2.   At all times relevant to this information, Stanton and

28   defendant agreed that, in exchange for defendant's managing

DOCKETED ON CM

OCT 27 2006

BY _____  015

1 Stanton's money, Stanton would pay defendant approximately six

2 percent of Stanton's income from his work acting in movies or $750

3 per month, whichever was higher.

4     3.    From in or about 1994 to in or about 2005, Stanton

5 employed a personal assistant ("Personal Assistant") who would

6 purchase groceries, household goods, and other items for Stanton

7 using a designated credit card (the "Citibank card") issued to her

8 from Stanton's account.  As Stanton's money manager, defendant would

9 pay the bills from the Citibank card using money in Stanton's

10 personal bank account.

11     4.    Defendant's scheme to defraud, described below, was

12 facilitated by the trust reposed in defendant by his client Stanton

13 as a result of the fiduciary relationship that defendant had with

14 him.

15 SCHEME TO DEFRAUD

16     5.    Beginning in or about 1998 and continuing to in or about

17 2005, in Los Angeles County, within the Central District of

18 California and elsewhere, defendant, aided and abetted by others,

19 knowingly and with intent to defraud, devised, participated in, and

20 executed a scheme and artifice to defraud Stanton as to material

21 matters, thereby depriving him of his intangible right to the honest

22 services of his manager, defendant, as described below.

23     6.    The scheme was carried out in essence as follows:

24         a.    Defendant used his access to Stanton's personal bank

25 and retirement accounts to withdraw money in excess of the funds

26 that he was entitled to under his retainer agreement.

27

28

1        b.   Defendant used the money that he had misappropriated

2  from Stanton's accounts in order to pay for defendant's own personal

3  and business expenses and to pay off his own debts.

4        c.   Defendant used Stanton's money to pay for expenses

5  incurred by Personal Assistant using the Citibank card, even though

6  defendant knew that a substantial portion of those expenses had

7  improperly been incurred by Personal Assistant for her own benefit

8  and not for Stanton's benefit.

9        d.   When Stanton asked defendant for information

10  concerning his accounts, defendant provided false information to

11  Stanton in order to conceal defendant's misappropriation of

12  Stanton's money.

13        e.   Altogether, defendant misappropriated -- and, by

14  allowing Personal Assistant to use improperly the Citibank card,

15  caused the misappropriation of -- a total of approximately $961,356

16  of Stanton's money.

17  USE OF A WIRE

18     7.   On or about March 28, 2002, within the Central District of

19  California, defendant, for the purpose of executing the above-

20  described scheme to defraud, caused the transmission of the

21  following wire communication in interstate and foreign commerce: a

22  fax transmission of an IRA Distribution Request Form from an office

23  of Donaldson Lufkin & Jenrette ("DLJ") in Los Angeles, California to

24  a division of DLJ in Jersey City, New Jersey, resulting in the

25  issuance of a check from Stanton's retirement account in

26  the amount of $40,000, at least $26,000 of which defendant

27

28

1 │ subsequently transferred into defendant's business account and spent

2 │ on his own expenses.

3                               DEBRA WONG YANG
                               United States Attorney

4

5

6                               THOMAS P. O'BRIEN
                               Assistant United States Attorney
7                               Chief, Criminal Division

8                               CHRISTINE EWELL
                               Assistant United States Attorney
9                               Chief, Major Frauds Section

10                              JILL FEENEY
                               Assistant United States Attorney
11                              Acting Deputy Chief, Major Frauds Section

12                              BEONG-SOO KIM
                               Assistant United States Attorney
13                              Major Frauds Section

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT



DEBRA WONG YANG
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
BEONG-SOO KIM (SBN 212911)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3868
    Facsimile: (213) 894-6269
    E-mail: beong-soo.kim@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. ___06-___809 |
| Plaintiff, | ) PLEA AGREEMENT FOR DEFENDANT |
| v. | ) WILLIAM WINE |
| WILLIAM WINE, | ) |
| Defendant. | ) |

1.   This constitutes the plea agreement between WILLIAM WINE ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.   This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

### PLEA TO INFORMATION

2.   Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a single-count information in

DOCKETED ON CM

OCT 2 7 2006

1 | the form attached to this agreement or a substantially similar
2 | form.

### NATURE OF THE OFFENSE

4 |     3.   In order for defendant to be guilty of count one,
5 | which charges a violation of Title 18, United States
6 | Code, Section 1343, the following must be true: (1) defendant
7 | engaged in a scheme to deprive another of his right to honest
8 | services; (2) defendant had a fiduciary or trust relationship
9 | with that other person; (3) defendant acted with the intent to
10 | deprive that person of his right to honest services; and (4)
11 | defendant used, or caused someone to use, a wire communication in
12 | interstate or foreign commerce to carry out the scheme.
13 | Defendant admits that defendant is, in fact, guilty of this
14 | offense as described in count one of the information.

### PENALTIES AND RESTITUTION

16 |     4.   The statutory maximum sentence that the Court can impose
17 | for a violation of Title 18, United States Code, Section 1343 is:
18 | 5 years imprisonment; a three-year period of supervised release;
19 | a fine of $250,000 or twice the gross gain or gross loss
20 | resulting from the offense, whichever is greatest; and a
21 | mandatory special assessment of $100.

22 |     5.   Defendant understands that defendant will be required to
23 | pay full restitution to the victim(s) of the offense.  Defendant
24 | agrees that, in return for the USAO's compliance with its
25 | obligations under this agreement, the amount of restitution is
26 | not restricted to the amounts alleged in the count to which

2

2007-MAR-23 10:30    FROM-                          T-282  P.004/023  F-285

1    defendant is pleading guilty and may include losses arising from
2    charges not prosecuted pursuant to this agreement as well as all
3    relevant conduct in connection with those count charges.  The
4    parties currently believe that the applicable amount of
5    restitution is approximately $961,356, but recognize and agree
6    that this amount could change based on facts that come to the
7    attention of the parties prior to sentencing.  Defendant further
8    agrees that defendant will not seek the discharge of any
9    restitution obligation, in whole or in part, in any present or
10   future bankruptcy proceeding.  The parties agree that, in the
11   event that others are subsequently held jointly and severally
12   liable for this restitution amount or a portion thereof, the
13   amount of restitution for which defendant is liable may decrease
14   depending on what other restitution payments are made.

15       6.   Supervised release is a period of time following
16   imprisonment during which defendant will be subject to various
17   restrictions and requirements.  Defendant understands that if
18   defendant violates one or more of the conditions of any
19   supervised release imposed, defendant may be returned to prison
20   for all or part of the term of supervised release, which could
21   result in defendant serving a total term of imprisonment greater
22   than the statutory maximum stated above.

23       7.   Defendant also understands that, by pleading guilty,
24   defendant may be giving up valuable government benefits and
25   valuable civic rights, such as the right to vote, the right to
26   possess a firearm, the right to hold office, and the right to

27

28                                  3

1  serve on a jury.

2      8.  Defendant further understands that the conviction in

3  this case may subject defendant to various collateral

4  consequences, including but not limited to, deportation,

5  revocation of probation, parole, or supervised release in another

6  case, and suspension or revocation of a professional license.

7  Defendant understands that unanticipated collateral consequences

8  will not serve as grounds to withdraw defendant's guilty plea.

9                          FACTUAL BASIS

10     9.  Defendant and the USAO agree and stipulate to the

11  statement of facts provided below.  This statement of facts

12  includes facts sufficient to support a plea (or pleas) of guilty

13  to the charges described in this agreement and to establish the

14  sentencing guideline factors set forth in paragraph 12 below.  It

15  is not meant to be a complete recitation of all facts relevant to

16  the underlying criminal conduct or all facts known to defendant

17  that relate to that conduct.

18     Beginning in or about 1996 and continuing to in or about

19  2005, defendant WILLIAM WINE ("defendant") worked as a personal

20  financial manager for Harry Dean Stanton and others.  As

21  Stanton's personal financial manager, defendant was responsible

22  for managing Stanton's personal financial affairs, including

23  paying Stanton's bills, preparing his tax returns, and investing

24  his money.  As Stanton's personal financial manager, defendant

25  had full access to Stanton's personal bank, business, and

26  retirement accounts.  Stanton and defendant agreed that, in

27

28                              4

1   exchange for defendant's managing Stanton's money, Stanton would
2   pay defendant approximately six percent of Stanton's income from
3   his work acting in movies or $750 per month, whichever was
4   higher.  From in or about 1994 to in or about 2005, Stanton
5   employed a personal assistant ("Personal Assistant") who would
6   purchase groceries, household goods, and other items for Stanton
7   using a designated credit card (the "Citibank card") issued to
8   her from Stanton's account.  As Stanton's money manager,
9   defendant would pay the bills from the Citibank card using money
10  in Stanton's personal bank account.  Defendant's scheme to
11  defraud, described below, was facilitated by the trust reposed in
12  defendant by his client Stanton as a result of the fiduciary
13  relationship that defendant had with him.

14      Beginning in or about 1998 and continuing to in or about
15  2005, in Los Angeles County, within the Central District of
16  California and elsewhere, defendant, aided and abetted by others,
17  knowingly and with intent to defraud, devised, participated in,
18  and executed a scheme and artifice to defraud Stanton as to
19  material matters, thereby depriving him of his intangible right
20  to the honest services of defendant.  The scheme was carried out
21  in essence as follows:  Defendant used his access to Stanton's
22  personal bank and retirement accounts to withdraw money in excess
23  of the funds that he was entitled to under his retainer
24  agreement.  Defendant used the money that he had misappropriated
25  from Stanton's accounts to pay for defendant's own personal and
26  business expenses and to pay off his own debts.  Defendant also
27
28                                  5

1  used Stanton's money to pay for expenses incurred by Personal
2  Assistant using the Citibank card, even though defendant knew
3  that a substantial portion of those expenses had improperly been
4  incurred by Personal Assistant for her own benefit and not for
5  Stanton's benefit.  When Stanton asked defendant for information
6  concerning his accounts, defendant provided false information to
7  Stanton in order to conceal defendant's misappropriation of
8  Stanton's money.  Altogether, defendant misappropriated -- and,
9  by allowing Personal Assistant to use improperly the Citibank
10 card, caused the misappropriation of -- a total of approximately
11 $961,356 of Stanton's money.

12      On or about March 28, 2002, within the Central District of
13 California, defendant, for the purpose of executing the above-
14 described scheme to defraud, caused the transmission of the
15 following wire communication in interstate and foreign commerce:
16 a fax transmission of an IRA Distribution Request Form from an
17 office of Donaldson Lufkin & Jenrette ("DLJ") in Los Angeles,
18 California to a division of DLJ in Jersey City, New Jersey,
19 resulting in the issuance of a check from Harry Dean Stanton's
20 retirement account in the amount of $40,000, at least $26,000 of
21 which defendant subsequently transferred into defendant's
22 business account and spent on his own expenses.

23                  WAIVER OF CONSTITUTIONAL RIGHTS

24      10.   By pleading guilty, defendant gives up the following
25 rights:

26           a) The right to persist in a plea of not guilty.

27

28                              6

1           b) The right to a speedy and public trial by jury.

2           c) The right to the assistance of legal counsel at

3   trial, including the right to have the Court appoint counsel for

4   defendant for the purpose of representation at trial.  (In this

5   regard, defendant understands that, despite his or her plea of

6   guilty, he or she retains the right to be represented by counsel

7   - and, if necessary, to have the court appoint counsel if

8   defendant cannot afford counsel - at every other stage of the

9   proceedings.)

10          d) The right to be presumed innocent and to have the

11  burden of proof placed on the government to prove defendant

12  guilty beyond a reasonable doubt.

13          e) The right to confront and cross-examine witnesses

14  against defendant.

15          f) The right, if defendant wished, to testify on

16  defendant's own behalf and present evidence in opposition to the

17  charges, including the right to call witnesses and to subpoena

18  those witnesses to testify.

19          g) The right not to be compelled to testify, and, if

20  defendant chose not to testify or present evidence, to have that

21  choice not be used against defendant.

22       By pleading guilty, defendant also gives up any and all

23  rights to pursue any affirmative defenses, Fourth Amendment or

24  Fifth Amendment claims, and other pretrial motions that have been

25  filed or could be filed.

26

27

28                                   7

## SENTENCING FACTORS

11. Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors (under the November 1, 2001 edition of the Sentencing Guidelines):

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. §2B1.1(a)(1)] |
| Specific Offense Characteristics (loss more than $400,000) | : | +14 | [U.S.S.G. §2B1.1(b)(1)(H)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. §3E1.1] |

Total Offense Level : 17

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 15 are met. The parties disagree over the applicability of the two-level adjustment set forth in U.S.S.G. §3B1.3 for "abuse of position of trust" and reserve their right to argue whether this adjustment should be imposed. Otherwise, subject to paragraph 14, defendant and the USAO agree not to seek, argue, or suggest

8

1  in any way, either orally or in writing, that any other specific

2  offense characteristics, adjustments or departures, from either

3  the applicable Offense Level or Criminal History Category, be

4  imposed.  If, however, after signing this agreement but prior to

5  sentencing, defendant were to commit an act, or the USAO were to

6  discover a previously  undiscovered act committed by defendant

7  prior to signing this agreement, which act, in the judgment of

8  the USAO, constituted obstruction of justice within the meaning

9  of U.S.S.G. § 3C1.1, the USAO would be free to seek the

10  enhancement set forth in that section.

11      13.   There is no agreement as to defendant's criminal

12  history or criminal history category.

13      14.   The stipulations in this agreement do not bind either

14  the United States Probation Office or the Court.  Both defendant

15  and the USAO are free to: (a) supplement the facts by supplying

16  relevant information to the United States Probation Office and

17  the Court, (b) correct any and all factual misstatements relating

18  to the calculation of the sentence, and (c) argue on appeal and

19  collateral review that the Court's sentencing guidelines

20  calculations are not error, although each party agrees to

21  maintain its view that the calculations in paragraph 12 are

22  consistent with the facts of this case.

23                      DEFENDANT'S OBLIGATIONS

24      15.   Defendant agrees that he or she will:

25          a) Plead guilty as set forth in this agreement.

26          b) Not knowingly and willfully fail to abide by all

27

28                              9

1  sentencing stipulations contained in this agreement.

2       c) Not knowingly and willfully fail to: (i) appear as

3  ordered for all court appearances, (ii) surrender as ordered for

4  service of sentence, (iii) obey all conditions of any bond, and

5  (iv) obey any other ongoing court order in this matter.

6       d) Not commit any crime; however, offenses which would

7  be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are

8  not within the scope of this agreement.

9       e) Not knowingly and willfully fail to be truthful at

10  all times with Pretrial Services, the U.S. Probation Office, and

11  the Court.

12       f) Pay the applicable special assessment at or before

13  the time of sentencing unless defendant lacks the ability to pay.

14                    THE USAO'S OBLIGATIONS

15     16.  If defendant complies fully with all defendant's

16  obligations under this agreement, the USAO agrees:

17       a) To abide by all sentencing stipulations contained in

18  this agreement.

19       b) At the time of sentencing, provided that defendant

20  demonstrates an acceptance of responsibility for the offense up

21  to and including the time of sentencing, to recommend a two-level

22  reduction in the applicable sentencing guideline offense level,

23  pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

24  move for an additional one-level reduction if available under

25  that section.

26       c) To recommend that defendant be sentenced at the low

27

28                              10

1  end of the applicable Sentencing Guidelines range provided that
2  the total offense level as calculated by the Court is 17 or
3  higher and provided that the Court does not depart downward in
4  offense level or criminal history category.

5                          BREACH OF AGREEMENT

6       17.  If defendant, at any time between the execution of this
7  agreement and defendant's sentencing on a non-custodial sentence
8  or surrender for service on a custodial sentence, knowingly
9  violates or fails to perform any of defendant's obligations under
10  this agreement ("a breach"), the USAO may declare this agreement
11  breached.  If the USAO declares this agreement breached, and the
12  Court finds such a breach to have occurred, defendant will not be
13  able to withdraw defendant's guilty plea, and the USAO will be
14  relieved of all of its obligations under this agreement.

15      18.  Following a knowing and willful breach of this
16  agreement by defendant, should the USAO elect to pursue any
17  charge or any civil or administrative action that was either
18  dismissed or not filed as a result of this agreement, then:

19          a) Defendant agrees that any applicable statute of
20  limitations is tolled between the date of defendant's signing of
21  this agreement and the commencement of any such prosecution or
22  action.

23          b) Defendant gives up all defenses based on the statute
24  of limitations, any claim of preindictment delay, or any speedy
25  trial claim with respect to any such prosecution or action,
26  except to the extent that such defenses existed as of the date of
27

28                              11

1  defendant's signing of this agreement.

2          c) Defendant agrees that: i) any statements made by
3  defendant, under oath, at the guilty plea hearing; ii) the
4  stipulated factual basis statement in this agreement; and iii)
5  any evidence derived from such statements, are admissible against
6  defendant in any future prosecution of defendant, and defendant
7  shall assert no claim under the United States Constitution, any
8  statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of
9  the Federal Rules of Criminal Procedure, or any other federal
10  rule, that the statements or any evidence derived from any
11  statements should be suppressed or are inadmissible.

12          LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

13          19.   Defendant gives up the right to appeal any sentence
14  imposed by the Court, including any order of restitution, and the
15  manner in which the sentence is determined, provided that (a) the
16  sentence is within the statutory maximum specified above and is
17  constitutional, (b) the Court in determining the applicable
18  guideline range does not depart upward in offense level or
19  criminal history category and determines that the total offense
20  level is 17 or below, and (c) the Court imposes a sentence within
21  or below the range corresponding to the determined total offense
22  level and criminal history category.  Defendant also gives up any
23  right to bring a post-conviction collateral attack on the
24  conviction or sentence, including any order of restitution,
25  except a post-conviction collateral attack based on a claim of
26  ineffective assistance of counsel, a claim of newly discovered

27

28                              12

1  evidence, or an explicitly retroactive change in the applicable

2  Sentencing Guidelines, sentencing statutes, or statutes of

3  conviction.  Notwithstanding the foregoing, defendant retains the

4  ability to appeal the conditions of supervised release imposed by

5  the court, with the exception of the following: standard

6  conditions set forth in district court General Orders 318 and 01-

7  05; the drug testing conditions mandated by 18 U.S.C. §§

8  3563(a)(5) and 3583(d); and the alcohol and drug use conditions

9  authorized by 18 U.S.C. § 3563(b)(7).

10      20.  The USAO gives up its right to appeal the sentence,

11  provided that (a) the Court in determining the applicable

12  guideline range does not depart downward in offense level or

13  criminal history category, (b) the Court determines that the

14  total offense level is 17 or above, and (c) the Court imposes a

15  sentence within or above the range corresponding to the

16  determined total offense level and criminal history category.

17              RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18      21.  Defendant agrees that if any count of conviction is

19  vacated, reversed, or set aside, the USAO may ask the Court to

20  void the entire plea agreement, with both the USAO and defendant

21  being released from all of their obligations under this

22  agreement.

23                      COURT NOT A PARTY

24      22.  The Court is not a party to this agreement and need not

25  accept any of the USAO's sentencing recommendations or the

26  parties' stipulations.  Even if the Court ignores any sentencing

27

28                              13

1 recommendation, finds facts or reaches conclusions different from
2 any stipulation, and/or imposes any sentence up to the maximum
3 established by statute, defendant cannot, for that reason,
4 withdraw defendant's guilty plea, and defendant will remain bound
5 to fulfill all defendant's obligations under this agreement. No
6 one - not the prosecutor, defendant's attorney, or the Court -
7 can make a binding prediction or promise regarding the sentence
8 defendant will receive, except that it will be within the
9 statutory maximum.

10                          NO ADDITIONAL AGREEMENTS

11     23.  Except as set forth herein, there are no promises,
12 understandings or agreements between the USAO and defendant or
13 defendant's counsel.  Nor may any additional agreement,
14 understanding or condition be entered into unless in a writing
15 signed by all parties or on the record in court.

16          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

17     24.  The parties agree and stipulate that this Agreement
18 will be considered part of the record of defendant's guilty plea
19 hearing as if the entire Agreement had been read into the record
20 of the proceeding.

21 //

22 //

23

24

25

26

27

28                                    14

1    This agreement is effective upon signature by defendant and

2  an Assistant United States Attorney.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
5
   DEBRA WONG YANG
6  United States Attorney

7

8  SEONG-SOO KIM                         Date  10/19/06
   Assistant United States Attorney

9

10    I have read this agreement and carefully discussed every

11  part of it with my attorney.  I understand the terms of this

12  agreement, and I voluntarily agree to those terms.  My attorney

13  has advised me of my rights, of possible defenses, of the

14  sentencing Guideline provisions, and of the consequences of

15  entering into this agreement.  No promises or inducements have

16  been made to me other than those contained in this agreement.  No

17  one has threatened or forced me in any way to enter into this

18  agreement.  Finally, I am satisfied with the representation of my

19  attorney in this matter.

20

21                                        Date  10/18/06

22  WILLIAM WINE
   Defendant

23

24    I am William Wine's attorney.  I have carefully discussed

25  every part of this agreement with my client.  Further, I have

26  fully advised my client of his rights, of possible defenses, of

27  the Sentencing Guidelines' provisions, and of the consequences of

28                              15

1 entering into this agreement. To my knowledge, my client's

2 decision to enter into this agreement is an informed and

3 voluntary one.

4

5 _____         10/18/06
                                          ----------
                                            Date
6 MARC HARRIS
  Counsel for Defendant
  William Wine

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              16

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CASE SUMMARY

Case Number _____ 06 - 809  Defendant Number _____
U.S.A. v. WILLIAM WINE  Year of Birth 1965
☐ Indictment  ☑ Information  Investigative agency (FBI, DEA, etc.) FBI

**NOTE: All items are to be completed. Information not applicable or unknown shall be indicated as "N/A".**

## OFFENSE/VENUE

a. Offense charged as a:  ☐ Petty Offense
   ☐ Misdemeanor  ☐ Minor Offense  ☑ Felony
b. Date of offense 1996-2005
c. County in which first offense occurred
   Los Angeles County
d. The crimes charged are alleged to have been committed in:
   CHECK ALL THAT APPLY
   ☑ Los Angeles     ☐ Ventura
   ☐ Orange          ☐ Santa Barbara
   ☐ Riverside       ☐ San Luis Obispo
   ☐ San Bernardino  ☐ Other _____
Citation of offense _____
_____

## RELATED CASE

Has an indictment or information involving this defendant and
the same transaction or series of transactions been previously
filed and dismissed before trial?  ☑ No  ☐ Yes
IF YES  Case Number _____

Pursuant to Section 11 of General Order 224, criminal cases
may be related if a previously filed indictment or information
and the present case:
a. arise out of the same conspiracy, common scheme,
   transaction, series of transactions or events; or
b. involve one or more defendants in common, and would
   entail substantial duplication of labor in pretrial, trial or
   sentencing proceedings if heard by difference judges.
Related case(s), if any:  MUST MATCH NOTICE OF RELATED
CASE _____
_____

## PREVIOUSLY FILED COMPLAINT

A complaint was previously filed on: _____
   Case Number _____
   Charging _____
_____
The complaint:  ☐ is still pending
   ☐ was dismissed on: _____

## COMPLEX CASE

Are there 8 or more defendants in the Indictment/Information?
   ☐ Yes*        ☑ No

Will more than 12 days be required to present government's
evidence in the case-in-chief?
   ☐ Yes*        ☑ No

*AN ORIGINAL AND 3 COPIES OF THE NOTICE OF COMPLEX
CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE
ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

### Superseding Indictment/Information

This is the _____ superseding charge, i.e. 1st, 2nd.
The superseding case was previously filed on:

Case Number _____

The superseded case:
☐ is still pending before Judge/Magistrate Judge

_____

☐ was previously dismissed on _____

Are there 8 or more defendants in the superseding case?
   ☐ Yes*        ☐ No

Will more than 12 days be required to present government's
evidence in the case-in-chief?
   ☐ Yes*        ☑ No

Was a Notice of Complex Case filed on the Indictment or
Information?
   ☐ Yes         ☑ No

*AN ORIGINAL AND 3 COPIES OF THE NOTICE OF COMPLEX
CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE
ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

Is an interpreter required:  ☐ Yes  ☑ No
IF YES, list language and/or dialect _____

DOCKETED ON CM
OCT 27 2006
BY _____ 015

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CASE SUMMARY

---

## OTHER

- ☑ Male     ☐ Female
- ☐ U.S. Citizen     ☐ Alien
- Alias Name(s) _____

This defendant is charged in:   ☑ All counts
☐ Only counts: _____

- ☐ This defendant is designated as "High Risk" per 18 USC 3146(a)(2) by the U.S. Attorney.
- ☐ This defendant is designated as "Special Case" per 18 USC 3166(b)(7).

Is defendant a juvenile?    ☐ Yes    ☑ No
IF YES, should matter be sealed?    ☐ Yes    ☐ No

The area of substantive law that will be involved in this case includes:

- ☐ financial institution fraud
- ☐ government fraud
- ☐ environmental issues
- ☐ narcotics offenses
- ☐ violent crimes/firearms
- ☐ Other: _____

- ☐ public corruption
- ☐ tax offenses
- ☑ mail/wire fraud
- ☐ immigration offenses
- ☐ corporate fraud

_____
_____
_____
_____

## CUSTODY STATUS

Defendant is **not** in custody:

a. Date and time of arrest on complaint: _____
b. Posted bond at complaint level on: _____
   in the amount of $ _____
c. PSA supervision?    ☐ Yes    ☐ No
d. Is a Fugitive    ☐ Yes    ☐ No
e. Is on bail or release from another district:
   _____
f. ☑ Has not been arrested but will be notified by summons to appear.
g. Warrant requested.    ☐ Yes    ☑ No

Defendant is in custody:

a. Place of incarceration:    ☐ State    ☐ Federal
b. Name of Institution: _____
c. If Federal: U.S. Marshal's Registration Number:
   _____
d. ☐ Solely on this charge. Date and time of arrest:
   _____
e. On another conviction:    ☐ Yes    ☐ No
   IF YES   ☐ State    ☐ Federal    ☐ Writ of Issue
f. Awaiting trial on other charges: ☐ Yes    ☐ No
   IF YES   ☐ State    ☐ Federal   AND
   Name of Court: _____

Date transferred to federal custody: _____

This person/proceeding is transferred from another district pursuant to F.R.CrP. ____ 20 ____ 21 ____ 400

---

## EXCLUDABLE TIME

Determinations as to excludable time prior to filing indictment/information EXPLAIN: _____
_____
_____
_____
_____

Date Oct. 20, 2006 _____

_____
*Signature of Assistant U.S. Attorney*

Beong-Soo Kim _____
*Print Name*

## PROOF OF SERVICE

United States of America v. William Wine, Case No. CR 06-00809 MLR

Judge: Manuel L. Real

    I, MELONY HEMPFLING, declare as follows:

    I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.  I am over the age of eighteen years, and am not a party to this action.

    On March 30, 2007, I served the following:

**EX PARTE APPLICATION OF TRACY TORME FOR SENTENCING CONSIDERATION AND INCLUSION IN RESITUTION ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS, EXHIBITS AND PROPOSED ORDER**

on the interested parties in this action by:

  X     **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP.  I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

  X     **FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s) indicated below.  The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

| | |
|---|---|
| Mr. Beong-Soo Kim<br>U.S. Attorney's Office<br>312 North Spring Street, Ste. 600<br>Los Angeles, CA 90012<br>(213) 894-6269 (facsimile) | Melissa M. Dulac, Esq.<br>Beck, De Corso, Daly, Kreindler &<br>Harris<br>601 W 5th Street, 12th floor<br>Los Angeles, CA, 90071<br>(213) 489-7532 (facsimile) |

  X     **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

    Executed at Los Angeles, California on March 30, 2007.


_____
MELONY HEMPFLING

1
